# IN THE UNITED STATES DISTRICT COURT

## FOR THE EASTERN DISTRICT OF TEXAS

### TEXARKANA DIVISION

| | | |
|---|---|---|
| **KENNETH AND PAM CROUCH, INDIVIDUALLY AND AS NEXT FRIENDS OF BROOKE CROUCH, A MINOR** | § § § § § | |
| *Plaintiffs*, | § § | **CIVIL ACTION NO.:** _____ |
| **v.** | § § | **JURY TRIAL DEMANDED** |
| **BLITZ U.S.A., INC.** | § § | |
| *Defendant.* | § § | |

---

## PLAINTIFFS' ORIGINAL COMPLAINT

---

COME NOW Plaintiffs Kenneth Crouch and Pam Crouch, Individually and as Next Friends and biological parents of Brooke Crouch ("Plaintiffs") complaining of Blitz U.S.A., Inc. (hereinafter "Blitz") and allege the following:

### INTRODUCTION

On or about December 18, 2009, a gas storage container (hereinafter "subject gas can") manufactured by Blitz exploded, causing Brooke Ashley Crouch (hereinafter "Brooke") to suffer severe burns. This action is brought against the Defendant to recover all damages to which Plaintiffs are entitled as a result of the severe injuries and damages sustained by Brooke as set forth herein.

## PARTIES

1.        Plaintiffs are individuals and residents of the State of Texas, Red River County.

2.        Defendant Blitz U.S.A., Inc. is an Oklahoma corporation that maintains its principle place of business in the State of Oklahoma.  Blitz may be served with process by serving its registered agent, Rocky Flick, Blitz U.S.A., Inc., 404 26th Ave. NW, Miami, Oklahoma 74354-2206.

## JURISDICTION AND VENUE

3.        This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(a).  The matter in controversy exceeds the sum of seventy-five thousand dollars ($75,000.00), exclusive of interest and costs, and diversity of citizenship exists between Plaintiffs and Defendant.

4.        Venue is proper in the District Court of the United States District Court for the Eastern District of Texas, Texarkana Division, pursuant to 28 U.S.C. § 1391(a)(2) because a substantial part of the events or omissions giving rise to the claim occurred in whole or in part within this District.

## FACTS COMMON TO ALL CLAIMS FOR RELIEF

5.        Blitz is in the business of designing, marketing, manufacturing and selling portable plastic gasoline cans.

6.        Blitz designed, manufactured, marketed and sold a model of gas can known as the Blitz Self Vent Can (hereinafter "can").

7.        The can was purchased prior to the incident which occurred on or about December 18, 2009.  The can contained gasoline at the time of the incident.

8.        On or about December 18, 2009, Brooke Crouch was at a gathering of high school friends where she was sitting around a camp fire.

9.      One of the boys at the gathering picked up the Blitz gas can and used it to try to rekindle the dying camp fire.

10.     Gasoline vapors were ignited outside of the can and flashed back inside of the can causing the can to suffer an internal explosion which caused flaming gasoline to erupt out of the can and across the fire where Brooke sat talking to friends.

11.     Brooke was wearing her cheerleading uniform at the time, and the flaming gasoline shot onto her hands and legs and up under her skirt causing her to suffer severe third degree burn injuries.

12.     After multiple attempts, friends were finally able to extinguish Brooke's burning body.

13.     Brooke suffered third degree burns.  While waiting for help to arrive, she was conscious and alert and experiencing excruciating pain. Brooke was taken to a burn unit, where she suffered through surgical procedures, skin grafting and almost daily debridement procedures. Even after release from the hospital, Brooke's skin did not heal completely and required the use of staples and wraps to hold it in place.  She also required extensive physical therapy and is now permanently scarred and disfigured both physically and psychologically.

## CLAIMS FOR RELIEF

## COUNT I – STRICT LIABILITY

14.     Plaintiffs re-allege and incorporate in this section each and every preceding allegation as if fully pleaded herein.

15.     Blitz is engaged in the business of designing, manufacturing, assembling, marketing, distributing, and selling the can to consumers within the stream of commerce.  Blitz designed, manufactured, assembled, marketed, distributed and sold the can that caused Brooke's injuries.

16.     Blitz expected the can to ultimately reach the residential consumer and/or users without substantial change in the condition in which it was originally sold.  The can did in fact reach the user(s) without a substantial change in the condition in which it was originally sold by Blitz and unexpectedly failed under ordinary and foreseeable use.  The can was not modified or altered after it left Defendant's control, and the can was being utilized in a foreseeable manner which was both known to Blitz and reasonably expected by them.

17.     At the time the can left Defendant's control, and at all times complained of herein, safer alternative designs, incorporated into other Blitz gas cans, were feasible to eliminate the risk of the subject gas can exploding without substantially impairing the usefulness and intended purpose of the product.

18.     The can was defective and unsafe for its intended purposes at the time it left Defendant's control, in that the design failed to include a flame arrestor device, which is a necessary safety device that would have prevented Brooke's catastrophic burn injuries and the catastrophic burn injuries of countless others.

19.     Blitz failed to act as a reasonable manufacturer by failing to implement a feasible alternative design to prevent foreseeable injuries and deaths from the lack of a flame arrestor on its gas cans.

20.     Blitz failed to act as a reasonable manufacturer by failing to produce a gas can closure that would prevent flammable gas fumes and liquid from escaping the can and allowing the gasoline to age into the explosive limit.

21.     Blitz knew or should have known of the can's susceptibility to flashback and explosion, which occurs when gasoline vapors outside the can ignite and the flames follow the vapor trail back into the can, causing an internal explosion within the can and a release of burning gasoline liquid and vapors and/or a flame thrower effect where burning vapors and liquid explode out of the can.  Both phenomena cause victims to be immolated.

22.     The Blitz gas can was unreasonably dangerous and defective in its design and manufacture because it did not incorporate a flame arrestor, a technologically and economically feasible safety device that would have prevented the explosion in the present case and/or other existing technology to prevent explosion.  Blitz failed to warn users of the defective condition of the can and that cans such as the one purchased may explode if there is a flashback that follows the gasoline vapors back to the can.

23.     A flame arrestor, sometimes called a flame arresting screen, flash arrestor or spark arrestor, is a small metal device that is placed in a container's openings and allows liquids to flow out of the container but prevents the a spark or flame from entering the container and igniting and internal explosion of the can.  The device is essentially a filter screen made out of either a perforated metal disk or a wire mesh screen.  Flame arrestors have been in existence for over two centuries and have a variety of commercial applications ranging from water heaters to rum bottles to other gasoline cans.

24.     The efficacy of flame arrestors has been known to the gasoline manufacturing industry for decades.  Manufacturers of portable gas cans have been aware of their existence and have included them in their design since before the 1920's.  Blitz even had a flame arrestor on their metal cans but chose to leave off the device when it began manufacturing its cheap plastic line of cans.  Blitz even investigated flame arresting technology but never got around to putting it into their cans, despite multiple ongoing lawsuits involving severely burned individuals.

25.     Since at least 1994, the utility and efficacy of flame arrestors has been a topic of discussion in the media and national publications and the subject of numerous lawsuits filed to consumers, users, and bystanders who have been burned and/or killed in encounters with portable gas cans that were not equipped with the device.

26.     Consequently, Blitz has known, or should have known, for decades prior to this incident that gas cans without flame arrestors were susceptible to flashback (i.e., when gasoline vapors outside the container ignite, the flames can follow the vapor trails back inside the container causing it to explode and/or spew flames and burning gasoline).

27.     Without the inclusion of a flame arrestor, the foreseeable risk of injury and/or death associated with the use of the subject gas can far exceeded any utility and/or benefits associated with its design.

28.     Nevertheless, despite the wealth of available scientific knowledge, Blitz has made, and continues to make, a conscious, willful, wanton and reckless decision to endanger the safety of consumers, users, and bystanders by refusing to incorporate a well-known safety devices and/or container designs into its portable gas cans, despite the fact that these safety devices and/or designs are economically and technologically feasible.

29.     Additionally, Blitz's can was manufactured in a manner that violated basic quality and testing standards making the container more likely to rupture.

30.     The can designed, manufactured, assembled, marketed, distributed, and sold by Blitz was defective and/or unreasonably dangerous when sold.

31.     The can designed, manufactured, assembled, marketed, distributed and sold by Blitz was the direct and proximate cause of Brooke's injuries and damages.

32.     As a direct and proximate result of Blitz's acts and/or omissions in the design, manufacture, assembly, marketing, distribution and sale of the can as alleged, Brooke suffered severe personal injuries, including, but not limited to, severe burns, severe physical pain and suffering, permanent scarring, psychological impairment, vocational impairment and emotional distress.  Brooke will require multiple additional future surgeries and related rehabilitation and medication as a result of her injuries.

33.     As a direct and proximate result of Blitz's acts and/or omissions in the design, manufacture, assembly, marketing, distribution and sale of the can as alleged, Brooke has suffered reasonable and necessary medical expenses in the past and will incur reasonable and necessary medical expenses in the future in an amount which is currently unknown but which will be pleaded when ascertained.

34.     As a direct and proximate result of Blitz's acts and/or omissions in the design, manufacture, assembly, marketing, distribution and sale of the can as alleged, Brooke has suffered lost income and loss of earning capacity in amounts which are currently unknown but which will be pleaded when ascertained.

35.     As a direct and proximate result of Blitz's acts and/or omissions in the design, manufacture, assembly, marketing, distribution and sale of the can as alleged, Blitz is liable to Plaintiff pursuant to the Texas Product Liability Act.

36.     In order to avoid liability in civil cases for damages such as this instant case, Blitz has destroyed and/or otherwise spoliated evidence, committed perjury and violated discovery rules and orders in attempt to prevent plaintiffs' allegations in this and other similar cases.

37.     Based upon the entirety of Blitz's actions as alleged in this paragraph and those preceding it, Plaintiffs reserve the right to amend the Complaint to request an award of punitive damages once discovery is completed.

## COUNT II – NEGLIGENCE

38.     Plaintiffs re-allege and incorporate in this section each and every preceding allegation as if fully pleaded herein.

39.     Blitz owed consumers and/or foreseeable users, including Brooke, the duty of reasonable care in its design, manufacture, assembly, marketing, distribution and sale of the subject gas can.

40.     Blitz ignored and/or breached that duty by its following negligent acts and/or omissions:

A.  Failed to design and produce a reasonably safe can;

B.  Designed, manufactured, assembled, marketed, distributed, and sold a can that was defective;

C.  Placed into the stream of commerce a can that was defective in design and manufacture;

D. Placed into the stream of commerce a can that was defective in that it failed to contain adequate warnings and instructions;

E. Placed into the stream of commerce a can that was unfit for its intended and anticipated use;

F. Placed into the stream of commerce a can that was likely to and did cause injury during its ordinary and/or foreseeable use;

G. Placed into the stream of commerce a can that contained manufacturing defects that increased the risk of explosion;

H. Failed to appropriately investigate and incorporate a flame arrestor in the product design;

I. Failed to properly test its can and prototypes thereof regarding the risk of internal explosion and/or the use of flame arresting material;

J. Failed to actively seek information regarding incidents involving explosion and/or internal combustion of gas cans and/or gasoline injuries;

K. Failed to take subsequent remedial measures such as post-sale warnings and/or to recall the can after learning, knowing, or having reason to know of the defects existing in the can that rendered it unreasonably dangerous for its intended use;

L. Failed to report incidences and lawsuits involving other consumers, users, and bystanders who have been burned and/or killed when encountering the can to the Consumer Product Safety Commission;

M. Sold the can when it knew it posed an unreasonable risk of flammable vapor ignition, flashback and explosion to users beyond that understood or contemplated

by the average reasonable consumer, and the risks associated with this design outweighed its utility;

N.   Failed to investigate consumer use of its cans with regards to starting fires and/or exposure to ignition sources and failed to incorporate the knowledge they did have into the design of their can through a standard FEMA design analysis.

O.   On at least two occasions, Blitz halted projects to equip its can with flame arrestors for financial and strategic legal reasons as opposed to safety considerations;

P.   Blitz spoliated evidence and failed to issue a litigation hold during ongoing litigation which would tend to prove Plaintiff's allegations that Blitz is liable to Plaintiff.

41.     As a direct and proximate result of Blitz's negligent acts and/or omissions, the can that caused Brooke's injuries was placed into the stream of commerce, in a defective and unreasonably dangerous condition, acting with complete indifference to, and in willful, conscious disregard for the safety of Brooke, and other foreseeable plaintiffs.  After discovery is conducted, Plaintiffs reserve the right to seek leave of the Court to amend their Complaint to seek punitive damages against Blitz for gross negligence.

42.     Brooke's injuries, and the manner in which they occurred, were reasonably foreseeable to Blitz, which had actual and/or constructive knowledge from within the industry, national publications, media reports and prior claims and lawsuits, that consumers, users, children and bystanders were being routinely burned and/or killed when encountering their portable gas cans.

## EXEMPLARY DAMAGES

43.     Plaintiffs re-allege and incorporate in this section each and every preceding allegation as if fully pleaded herein.

44.     Defendant's acts and/or omissions pertaining to the its portable gas cans, when viewed objectively from Defendant's standpoint at the time of the occurrence, involved an extreme degree of risk, considering the probability and magnitude of the potential harm to others from gas cans that are highly susceptible to explosions.

45.     Moreover, Defendant Blitz had actual, subjective awareness of such risk but nevertheless proceeded with conscious indifference to the rights, safety, and welfare of others and even joked about such injuries.

46.     Defendant's acts and/or omissions constituted a flagrant disregard for the safety of consumers, users, and bystanders that encounter its portable gas cans, including Plaintiffs.  Thus, Plaintiffs are entitled to exemplary damages for injuries resulting from gross negligence in an amount to be determined by a jury.

## PRAYER

WHEREFORE, Plaintiffs pray for judgment against Defendant as follows:

A.     For damages in excess of $75,000 sustained by Plaintiffs, including, but not limited to, those damages set forth above in an amount to be determined by the trier of fact;

B.     For exemplary damages in an amount to be determined by the trier of fact;

C.     For pre-judgment and post-judgment interest;

D.     For all costs of Court; and

E.     For any such further relief that Plaintiffs may be justly entitled.

Respectfully submitted,


_____/s/ MF_____.
**MATTHEW B. FLANERY**
Texas Bar No. 24012632
**DARREN GRANT**
Texas Bar No. 24012723
**GRANT & FLANERY, P.C.**
216 W. Erwin, Suite 200
Tyler, Texas 75702
(903) 596-8080 (Telephone)
(903) 596-8086 (Facsimile)
Matt@GFTexas.com


**DIANE M. BRENEMAN**
Missouri Bar No. 39988
**STACEY L. DUNGAN**
Missouri Bar No. 37180
**BRENEMAN DUNGAN, L.L.C.**
311 Delaware
Kansas City, Missouri 64105
(816) 421-0114 (Telephone)
(816) 421-0112 (Facsimile)


**ATTORNEYS FOR PLAINTIFFS**


**PLAINTIFFS RESPECTFULLY REQUEST A TRIAL BY JURY ON ALL
COUNTS AND ISSUES**